# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | | |
|---|---|---|
| United States of America<br>v.<br><br>RYAN ANDREW HASKAMP<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  1:20-mj-907 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Listed in Affidavit__ in the county of __Hamilton__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Conspiracy to Possess with Intent to Distribute and Distribute Methamphetamine |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Edward P. Schaub, ATF
*Printed name and title*

Sworn to before me and signed in my presence.
**via FaceTime video**

Date: **Dec 2, 2020**

_____
Karen L. Litkovitz
**United States Magistrate Judge**

City and state:  Cincinnati, Ohio

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Edward P. Schaub, being duly sworn hereby and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging Ryan **HASKAMP** with a violation of 21 U.S.C. § 846, conspiracy to possess with intent to distribute and to distribute a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and all in violation of 21 U.S.C. § 846.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since September 2014. I am currently assigned to the ATF Organized Crime Investigative Squad. I am a graduate of the Criminal Investigator Training program and Special Agent Basic Training in Glynco, Georgia. Prior to becoming a Special Agent, I was a Hopkinsville Kentucky Police Officer for eight years and was an ATF Task Force Officer assigned to the Western Kentucky Gun Crimes Task Force in Christian County, Kentucky. I am a graduate of the Department of Criminal Justice Training Center in Richmond, Kentucky. During my time with ATF, I have been involved in numerous investigations of violations of federal and state criminal laws resulting in numerous successful prosecutions.

3. The facts in this affidavit are based on personal knowledge from my participation in this investigation and information presented to me by other law enforcement officers involved in this case. I have not included in this affidavit each and every detail I know relating to this investigation. The information outlined below is provided for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant for Ryan **HASKAMP**. The sources of my information and beliefs include: (1) oral and written reports about this and other investigations which I have received from Drug Enforcement Administration (DEA) agents and other law enforcement authorities; (2) physical and electronic surveillance conducted by DEA Special

Agents and/or other law enforcement authorities which have been reported to me either directly or indirectly; and (3) reports from confidential informants received during the course of the investigation.

4. The information contained in this affidavit relates to a joint DEA, ATF, and Northern Kentucky Drug Strike Force (NKDSF) investigation of Ryan **HASKAMP** and others involved in **HASKAMP's** drug trafficking organization (DTO).

## **PROBABLE CAUSE**

### A. HASKAMP Identified as a Crystal Methamphetamine Source of Supply in Cincinnati

5. Beginning on or about July 9, 2020, Cincinnati DEA agents were contacted by NKDSF agents regarding a drug and weapons trafficking organization led by **HASKAMP** in and around the Cincinnati, Ohio area. Cincinnati DEA learned of this information through one of NKDSF's active investigations into a local DTO.

6. On or around July 13, 2020, NKDSF Agent Christopher Boyd, Drug Abuse Reduction Task Force (DART) Agent Pat Kemper, and I met with CS-1[1] who is familiar with the members and activities of the **HASKAMP** DTO.

7. CS-1 said that throughout July 2020 s/he witnessed **HASKAMP** sell large quantities of crystal methamphetamine on multiple occasions. Additionally, CS-1 provided agents with a video s/he took while with **HASKAMP** where he is readily identifiable in possession of a large quantity of crystal methamphetamine. S/he said that **HASKAMP** and his DTO use multiple residences throughout Hamilton County, Ohio to store large quantities of illegal drugs (*i.e.* stash houses), guns, and money, which constitute the proceeds of illegal drug and weapons trafficking.

---

[1] Information provided by CS-1 in the past was accurate and reliable and resulted in the seizure of illegal drugs and the arrest of those selling the drugs. CS-1 was working in consideration of criminal charges against Jabriel CHAFIN to include trafficking in controlled substance (methamphetamine) and trafficking in controlled substance (cocaine). CS-1's criminal history includes felony convictions for possession of a controlled substance (methamphetamine) and possession of a controlled substance (cocaine).

### B. Wire Interceptions Confirm HASKAMP Distributes Drugs throughout Cincinnati

8. On October 16, 2020, Timothy S. Black, United States District Court Judge for the Southern District of Ohio authorized the initial interception of wire and electronic communications over (513) 368-2246 subscribed to "No Name" and used by **HASKAMP**. Interceptions over that phone were authorized through November 15, 2020, at which time interceptions terminated.

9. DEA agents began intercepting communications on October 16, 2020 and learned that **HASKAMP** was in contact with Michael BOEH. BOEH used telephone number 317-981-9856, subscribed to "Mickey Mouse." The following is an excerpt from a call intercepted between the two on October 17, 2020 at approximately 9:47 p.m.:

| | |
|---|---|
| BOEH | Yeah, I don't know why you don't bro you're trippin bro I don't know why I done told you, you're sendin money out and I can get em for you, I'll give at that all day. |
| **HASKAMP** | Because I've got a thing going with my dude already and I ain't gonna side step it just because I can get it for a better price is all it is. |
| BOEH | I mean, you're getting [inaudible] you're getting, yeah but you're payin [inaudible]. |
| **HASKAMP** | Like that's what it is like we've been partners in it for a minute. That's all it's about. |
| BOEH | What? |
| **HASKAMP** | For me like, because me and him have been doing this for a long time together. So I'm not just gonna side step him and leave. |
| BOEH | I mean, nigga you're payin 56, that's, that's the shit I'm, that's a price I'm, I'm giving them to you for that in the city! |
| **HASKAMP** | Right. |
| BOEH | If that don't tell you something. |
| **HASKAMP** | I'm, I'm payin about the same, I'm paying a little bit under that. |
| BOEH | Well that's what I'm sayin I mean, that's what I'm givin, I'm selling them to you for that here. |
| **HASKAMP** | Right. |
| BOEH | What do you think I'd give you, give em to you for out there? |
| **HASKAMP** | Right, yeah. I mean, if I, if I get [inaudible] on board with it I'd be down. |
| BOEH | I mean. |
| **HASKAMP** | But, if, I'll see what my dude wants to do I'll ask him and see what he says. |
| BOEH | I mean bro, I can probably plug in, I , I , I mean, I can probably start at, you could start servin him man, on some real shit. |
| **HASKAMP** | No, he don't, he don't, it ain't like that. |

| BOEH | I promise you. |
| HASKAMP | Nah, he don't fuck, he don't fuck with other motherfuckers like that. |
| BOEH | Bro and he's saying that, tell him I'll bring em to his door, I don't give a fuck, if he selling em for that, if he's payin anything more than three, I'll bring em to his door for the same, I'll, I'll beat the ticket. |
| HASKAMP | He's in Arizona now. |
| BOEH | Man, I'll definitely bring, I'll bring them right to his fuckin doorstep. I'll bring em to his door, if he's in Arizona, I'll give them to him for 28 right now. |
| HASKAMP | Right. |
| BOEH | Matter of fact if he gets 20 or better I'll get em for him for 25. |

10. Based on my training and experience, I believe that **HASKAMP** and BOEH are discussing the drug trade. When BOEH said "Yeah, I don't know why you don't bro…You're sendin money out and I can get em for you, I'll give at that all day long," I believe that BOEH told **HASKAMP** that he can provide drugs at the same price as **HASKAMP's** current supplier. Furthermore, when **HASKAMP** responded "[b]ecause I've got a thing going with my dude already and I ain't gonna side step it just because I can get it for a better price is all it is," I believe that **HASKAMP** told BOEH that he is satisfied with his current drug source of supply and is going to remain loyal. Based on my training and experience, I believe that when BOEH said "I mean… you're payin 56, that's, that's the shit I'm, that's the price I'm, I'm giving them to you for that in the city" he is referring to the price of one pound of crystal methamphetamine, specifically, "56" which I believe means $5,600. Furthermore, when BOEH said "…if he's payin anything more than three, I'll bring em to his door for the same…" he told **HASKAMP** that if his current source of supply is paying over $3,000 per pound of crystal methamphetamine in Arizona, then **HASKAMP's** current supplier is overpaying for crystal methamphetamine and that **HASKAMP** should solely purchase crystal methamphetamine from BOEH. Based on my interpretation of the above exchange between BOEH and **HASKAMP**, I believe that **HASKAMP** sold all of his crystal methamphetamine and was looking for a temporary source while he waited on his Arizona source of supply to re-supply him with crystal methamphetamine.

11. On November 5, 2020, Timothy S. Black, United States District Court Judge for the Southern District of Ohio authorized the initial interception of wire and electronic communications over (513) 515-7454 subscribed to "Tiamarie Mcclellan" and used by **HASKAMP**. Interception over this phone is authorized through December 5, 2020, at which time interceptions will terminate.

12. On November 20, 2020, at approximately 1:15 p.m., a call was intercepted over **HASKAMP's** cell phone from telephone number 859-786-8544, used by Crystal RANDALL. The following is an excerpt of that telephone call:

| **HASKAMP** | No they're not and I've got, I've got people over there cause, that thing is coming today so…. |
|---|---|
| **RANDALL** | Ok. |
| **HASKAMP** | I'll have my Arizona shit. It'll be here before, you know how that goes sometime. We don't know when. |
| **RANDALL** | Ok, so um, Destiny, my friend. I went over to her house and she had some speed. |
| **HASKAMP** | What? |
| **RANDALL** | She had some speed. |
| **HASKAMP** | Yeah. |
| **RANDALL** | It's like, pre-corona fuckin best speed I've had in like six months speed. |
| **HASKAMP** | Where, ok, what's it look like? |
| **RANDALL** | She said she, beautiful, fucking clear as fuck. It's amazing. |
| **HASKAMP** | Clear, yeah. |
| **RANDALL** | Um, she went to Atlanta to get it. |
| **HASKAMP** | Right. Yeah, that's cool. |
| **RANDALL** | [Unintelligible] |
| **HASKAMP** | What're they chargin for it? |
| **RANDALL** | Um. |
| **HASKAMP** | Cause you wouldn't believe how low the prices really are right now, people just don't know. |
| **RANDALL** | No, I do know. |
| **HASKAMP** | Do you? |
| **RANDALL** | Yeah. But. |
| **HASKAMP** | What's the lowest you've heard? |
| **RANDALL** | For what a zip? |
| **HASKAMP** | I mean yeah sure a zip whatever. |
| **RANDALL** | Well I mean what're you thinking, what do you want me to say for a pound? |
| **HASKAMP** | Yeah. That would be the only thing I would be interested in is pounds, I wouldn't I mean I don't care what the price of a zip is. |
| **RANDALL** | Well obviously… [Unintelligible] |

| HASKAMP | Well I'll have fucking, four of them here in a little bit probably. I don't know how many they sent they don't ever tell me. But it'll be three or four. |

13. Based on my training and experience, I believe that in the above exchange **HASKAMP** and **RANDALL** are discussing the drug trade. When RANDALL said "…best speed I've had in like six months speed" she is talking about crystal methamphetamine because I know that "speed" is a street term for crystal methamphetamine. Furthermore when **HASKAMP** said "[y]eah. That would be the only thing I would be interested in is pounds, I wouldn't I mean I don't care what the price of a zip is," he told RANDALL that he is not interested in purchasing anything other than pounds of crystal methamphetamine, for instance he is not interested in "zip(s)," which I know is a street term referring to an ounce of drugs. Additionally, I believe that when **HASKAMP** said "[w]ell I'll have fucking, four of them here in a little bit probably. I don't know how many they sent they don't ever tell me. But it'll be three or four," he is referring to three or four pounds of crystal methamphetamine being sent to him, based on the context of the conversation as further explained below.

14. On November 20, 2020, at approximately 5:34 p.m., SA Keller monitored a telephone call over **HASKAMP's** cell phone from telephone number 513-850-6704, used by UM-1. During the telephone call, UM-1 told **HASKAMP** "it's there," and further, that **HASKAMP** will notify "them" right now.

15. On November 20, 2020, at approximately 5:35 p.m., a call was intercepted over **HASKAMP's** cell phone to telephone number 513-341-3130, used by Michael MOBLEY. The following is an excerpt of that conversation:

| MOBLEY | Hello. |
| **HASKAMP** | It's there. |
| MOBLEY | [Heard walking and opening a door] Ain't nothin on the porch. |
| **HASKAMP** | They said they sent the notification. |
| MOBLEY | Well, would they put it anywhere other than? |

| HASKAMP | I don't know, I don't think so. I wouldn't think that they would. Look at that piece of mail on the fucking, on the thing right there, there's a piece of mail on that little um, table or whatever just through the front door. |
|---|---|
| MOBLEY | It's Humana. |
| HASKAMP | Huh? |
| MOBLEY | It's uh, Humana. |
| HASKAMP | What's it say? That piece of mail right there on the table as you walk in the front door. |
| MOBLEY | Yeah. |
| HASKAMP | What does it, what's that say? |
| MOBLEY | Bora L. Young. |
| HASKAMP | I know that much what I'm talking about the address. |
| MOBLEY | Oh uh, 1627. |
| HASKAMP | 1627? |
| MOBLEY | Yeah. |
| HASKAMP | That's where it's at. Tell her to go to 1627 right now and grab it. |
| MOBLEY | Want me to go down there? |
| HASKAMP | What yeah do it right now. |
| MOBLEY | Yep. |
| HASKAMP | Alright. I'm pullin up on you right now. |

16. Based on my training and experience, I believe in the above exchange that **HASKAMP** and MOBLEY discussed a package of crystal methamphetamine that was set to be delivered to **HASKAMP**. When **HASKAMP** said "It's there...They said they sent the notification," he told MOBLEY that he received notification that a package was delivered. When **HASKAMP** asked MOBLEY about the contents of the letter on the table and MOBLEY responded "1627," I believe that MOBLEY is identifying a residential address. Based on my training and experience as well as my participation in this investigation, I believe **HASKAMP** is discussing the delivery of a package of methamphetamine. When **HASKAMP** asked about the address and MOBLEY responded "oh uh, 1627," I believe MOBLEY is referring to 1627 De Sales Lane, which is the address next to 1625 De Sales Lane—which I know was **HASKAMP's** Airbnb at the time based on interceptions over **HASKAMP's** cell phone as further explained below. Based on my training and experience, I believe **HASKAMP** used MOBLEY to recover the delivered drug package in order to minimize his exposure to law enforcement.

17. On November 20, 2020, at approximately 5:39 p.m., agents intercepted a call over

HASKAMP's cell phone to phone number 513-850-6704, used by UM-1. HASKAMP told UM-1, "It's here." I believe this phone call was about a package containing three to four pounds of methamphetamine that was set to be delivered to HASKAMP. The following is an excerpt of the intercepted call:

| UM-1 | What up. |
| HASKAMP | Hey, it's here, we're good. |
| UM-1 | Alright, alright. [Unintelligible] alright, my heart dropped. I was like fuck. |
| HASKAMP | Nah, uh, yeah we, we're good they just, them motherfuckers don't ring the doorbell or nothing I guess, they just. |
| UM-1 | Yeah, man just uh. |
| HASKAMP | I mean. They just drop that motherfucker. |
| UM-1 | Yep uh uh, Ima, uh Ima, call you back in like ten minutes if that's cool. |
| HASKAMP | That's cool yeah cause I'm I'm throwin it in the fridge real quick I'm gonna look at it with the thermal imaging camera real quick and make sure it's good. |
| UM-1 | The thermal imaging? [Unintelligible] |
| HASKAMP | I got a thermal imaging camera man, that I look at it with to make sure that there ain't nothing that ain't supposed to be in there, in there. |
| UM-1 | Oh, so something don't pop off. |
| HASKAMP | Yep yep. |
| UM-1 | Alright. |
| HASKAMP | Yep. |

18. Based on interceptions over HASKAMP's cell phone, agents knew that on November 20, 2020, HASKAMP was staying at an Airbnb located at 1625 De Sales Lane, Cincinnati, Ohio 45206. HASKAMP provided this address as a meeting place for transactions with drug customers numerous times beginning on November 12, 2020. Furthermore, on November 17, 2020, agents saw HASKAMP pull into the driveway of 1625 De Sales Lane in a dark BMW previously identified as HASKAMP's. Based on my training and experience, I know that drug traffickers will have drug packages sent to addresses unassociated with themselves, so that if law enforcement intercepts the package, it would be difficult to tie him/her to the specific package containing contraband.

19. On November 20, 2020, United States Magistrate Judge Stephanie K. Bowman of the Southern District of Ohio, signed a warrant authorizing the collection of GPS location

information (referred to as "pings") from MOBLEY's phone. On that date, the GPS pings showed MOBLEY within the area of 1625 De Sales Lane. Agents surveilled 1625 De Sales Lane and at approximately 7:20 p.m., agents saw a white Chevrolet, bearing Kentucky license plate 757ZLL, park in front of 1625 De Sales. Agents further saw individuals get into the white Chevrolet and then leave the area. Agents followed the white Chevrolet into Kentucky. During the surveillance, the GPS pings on MOBLEY's phone moved in conjunction with the location of the white Chevrolet.

20. At approximately 8:50 p.m., the white Chevrolet was traffic-stopped by the Kenton County Police Department. Officers identified MOBLEY as the driver of the vehicle. A subsequent search of the vehicle resulted in the seizure of approximately eight ounces (1/2 pound) of crystal methamphetamine. MOBLEY was interviewed and said that he was house-sitting an Airbnb off of De Sales in Cincinnati for a friend named "HK." Agents know that "HK" is a moniker **HASKAMP** uses. MOBLEY further said that he has known HK since January 2020 and since then, has purchased approximately five pounds of crystal methamphetamine, acid (LSD), molly (MDMA), cocaine and 1000 Xanax pills from him.

21. Based on my knowledge that **HASKAMP** was waiting on a package to be delivered as described above, my knowledge that the package was delivered to 1627 De Sales Lane, MOBLEY retrieved the package from 1627 De Sales Lane and brought it next door to 1625 De Sales Lane, and my knowledge that MOBLEY—while under constant surveillance—was stopped by law enforcement after leaving 1625 De Sales Lane with a distribution quantity of crystal methamphetamine, I believe that **HASKAMP** had a package of crystal methamphetamine delivered to Cincinnati for further distribution.

22. Based on my training and experience; the fact that **HASKAMP** discussed drug trafficking over intercepted phone calls, including conversations about purchasing pounds of methamphetamine; the fact that **HASKAMP** coordinated the delivery of a package containing

methamphetamine; the fact that **HASKAMP** discussed the arrival of a methamphetamine package at **HASKAMP's** Airbnb with UM-1; the fact that **HASKAMP** instructed MOBLEY to retrieve the package from **HASKAMP's** Airbnb, the fact that a package containing methamphetamine was recovered when MOBLEY was traffic-stopped, I believe there is probable cause that **HASKAMP** did knowingly and intentionally combine, conspire, confederate and agree with others known and unknown to possess with intent to distribute and to distribute methamphetamine when he coordinated the delivery of methamphetamine to his Airbnb.

## CONCLUSION

23. Based on the evidence as a result of this investigation, there is probable cause that Ryan **HASKAMP** did knowingly and intentionally combine, conspire, confederate and agree with others known and unknown, to possess with intent to distribute and to distribute a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and all in violation of 21 U.S.C. § 846.

Respectfully submitted,

_____
EDWARD P. SCHAUB
Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Subscribed and sworn to before me on this 2nd day of December, 2020.

_____
Karen L. Litkovitz
United States Magistrate Judge